Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Hilary Potashner (SBN 167060)
*hpotashner@larsonllp.com*
A. Alexander Lowder (SBN 269362)
*alowder@larsonllp.com*
Jennifer C. Cooper (SBN 324804)
*jcooper@larsonllp.com*
**LARSON LLP**
555 S. Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone:  213-436-4888
Facsimile:  213-623-2000

Attorneys for Claimants
SCUDERIA DEVELOPMENT, LLC,
VON KARMAN – MAIN STREET, LLC,
1001 DOUBLEDAY, LLC, and
10681 PRODUCTION AVENUE, LLC

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 5:17-CV-01873-DMG (SPx) |
| Plaintiff, | *[Hon. Dolly M. Gee]* |
| vs. | **CLAIMANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINTS** |
| REAL PROPERTY LOCATED AT 14600 INNOVATION DRIVE, RIVERSIDE, CALIFORNIA, | |
| Defendant. | *[Filed concurrently with Claimants' Request for Judicial Notice; [Proposed] Order re Request for Judicial Notice; [Proposed] Order Granting Motion to Dismiss]]* |
| | Date:      January 7, 2022<br>Time:      9:30 a.m.<br>Ctrm:      8C |

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 8:17-CV-1592-DMG (SPx) |
| Plaintiff, | |
| vs. | |
| REAL PROPERTY LOCATED AT 2323 MAIN STREET, IRVINE, CALIFORNIA, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | Case No. 5:17-CV-01872-DMG (SPx) |
| Plaintiff, | |
| vs. | |
| REAL PROPERTY LOCATED AT 1001 S. DOUBLEDAY AVENUE, ONTARIO, CALIFORNIA, | |
| Defendant. | |
| UNITED STATES OF AMERICA, | Case No. 5:17-CV-1875-DMG (SPx) |
| Plaintiff, | |
| vs. | |
| REAL PROPERTY LOCATED AT 10681 PRODUCTION AVENUE, FONTANA, CALIFORNIA, | |
| Defendant. | |

CLAIMANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINTS

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

   **PLEASE TAKE NOTICE** that Claimants Scuderia Development, LLC, 1001 Doubleday, LLC, Von Karman-Main Street, LLC, and 10681 Production Avenue, LLC (collectively, the "Claimants"), by and through their attorneys of record, on January 7, 2022, at 9:30 a.m. or as soon thereafter as the matter may be heard, will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the First Amended Complaints filed by the government on September 22, 2021 in case numbers 17-cv-01592 (Dkt. 81), 17-cv-01872 (Dkt. 90), 17-cv-01873 (Dkt. 84), and 17-cv-01875 (Dkt. 80).

   This motion is based upon this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all other papers and records filed in this matter, and any other argument or evidence that may presented at or in connection with the hearing on this motion.

   Pursuant to C.D. Cal. L.R. 7-3, the parties met and conferred on November 17, 2021 before Claimants filed this motion to dismiss.

Dated:  December 3, 2021          LARSON LLP


                    By:   /s/ *Hilary Potashner*
                       _____
                       Stephen G. Larson
                       Hilary Potashner
                       A. Alexander Lowder
                       Jennifer C. Cooper
                       Attorneys for Claimants
                       SCUDERIA DEVELOPMENT, LLC,
                       VON KARMAN – MAIN STREET, LLC,
                       1001 DOUBLEDAY, LLC, and
                       10681 PRODUCTION AVENUE. LLC

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF FACTS .......................................................................... 2

      A.    The Warehouses ......................................................................... 2

      B.    The Perfectus Entities ............................................................... 3

      C.    The Alston Entities .................................................................... 4

      D.    The Indictment and Convictions in the Criminal Matter ......... 4

      E.    The Government's Prior Attempts to Obtain Forfeiture of the
            Warehouses ................................................................................ 6

III.  LEGAL STANDARD ................................................................................ 7

IV.   ARGUMENT ............................................................................................. 8

      A.    The FAC Fails to State a Claim for Forfeiture of the Warehouses
            Under Section 981(a)(1)(A) ...................................................... 8

            1.    The Warehouses Were Not Involved in the Transactions
                  Charged in the Indictment ............................................ 10

            2.    The Wire Transfers Relating to the Purchasing of the
                  Warehouses Do Not Support Forfeiture ....................... 11

            3.    The Wire Transfers Relating to the Maintenance Payments
                  for the Warehouses ....................................................... 15

      B.    The FAC is Barred by the Doctrine of Res Judicata ............... 17

      C.    The FAC is Barred by the Doctrine of Judicial Estoppel ........ 20

V.    CONCLUSION ........................................................................................ 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*In re 650 Fifth Ave. & Related Properties*,
   777 F. Supp. 2d 529 (S.D.N.Y. 2011) ...................................................9

*BASF Corp. v. United States*,
   30 C.I.T. 227 (2006), *aff'd*, 497 F.3d 1309 (Fed. Cir. 2007) ...........13

*In re CFB Liquidating Corp.*,
   581 B.R. 317 (Bankr. N.D. Cal. 2017) ..............................................25

*Dzakula v. McHugh*,
   746 F.3d 399 (9th Cir. 2014) ............................................................21

*Gagne v. Zodiac Mar. Agencies, Ltd.*,
   274 F. Supp. 2d 1144 (S.D. Cal. 2003) ............................................23

*Hamilton v. State Farm Fire & Cas. Co.*,
   270 F.3d 778 (9th Cir. 2001) .......................................................22, 23

*Helfand v. Gerson*,
   105 F.3d 530 (9th Cir. 1997) ............................................................20

*Int'l Union of Operating Engineers-Emps. Const. Indus. Pension,*
   *Welfare & Training Tr. Funds v. Karr*,
   994 F.2d 1426 (9th Cir. 1993) ..........................................................17

*Marin v. HEW, Health Care Financing Agency*,
   769 F.2d 590 (9th Cir. 1985) ............................................................20

*Mpoyo v. Litton Electro-Optical Sys.*,
   430 F.3d 985 (9th Cir. 2005) ............................................................19

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .........................................................................23

*Niz-Chavez v. Garland*,
   141 S. Ct. 1474 (2021).......................................................................22

*Rissetto v. Plumbers & Steamfitters Local 343*,
   94 F.3d 597 (9th Cir. 1996) .........................................................21, 24

*Roth v. Garcia Marquez*,
    942 F.2d 617 (9th Cir. 1991) ............................................................................ 2

*Samuels v. Northern Telecom, Inc.*,
    942 F.2d 834 (2d Cir. 1991) ........................................................................... 19

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ............................................................................ 7

*United States v. $405,089.23 U.S. Currency*,
    122 F.3d 1285 (9th Cir. 1997) .......................................................................... 9

*United States v. All Monies ($477,048.62) In Acct. No. 90-3617-3,*
    *Israel Disc. Bank, New York, N.Y.*,
    754 F. Supp. 1467 (D. Haw. 1991)................................................................... 9

*United States v. Bajakajian*,
    524 U.S. 321 (1998) ........................................................................................ 17

*United States v. Banco Intrenacional/Bital S.A.*,
    110 F. Supp. 2d 1272 (C.D. Cal. 2000)..................................................... 18, 20

*United States v. Brown*,
    186 F.3d 661 (5th Cir. 1999) .......................................................................... 16

*United States v. Giese*,
    597 F.2d 1170 (9th Cir. 1979) ........................................................................ 19

*United States v. Goldtooth*,
    754 F.3d 763 (9th Cir. 2014) .......................................................................... 12

*United States v. Ibrahim*,
    522 F.3d 1003 (9th Cir. 2008) ........................................................................ 20

*United States v. Jackson*,
    935 F.2d 832 (7th Cir.1991) ........................................................................... 16

*United States v. Kim*,
    806 F.3d 1161 (9th Cir. 2015) ........................................................................ 21

*United States v. Lee*,
    2009 WL 724042 (N.D. Cal. Mar. 18, 2009) ........................................... 19, 20

*United States v. Liquidators of Eur. Fed. Credit Bank*,
    630 F.3d 1139 (9th Cir. 2011)..................................................................*passim*

CLAIMANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINTS

*United States v. McGahee*,
    257 F.3d 520 (6th Cir. 2001) ............................................................ 16

*United States v. Nicolo*,
    597 F. Supp. 2d 342 (W.D.N.Y. 2009) ............................................. 9

*United States v. One White Crystal Covered Bad Tour Glove and Other*
    *Michael Jackson Memorabilia*,
    2012 WL 8455336 (C.D. Cal. Apr. 12, 2012).................................7, 11

*United States v. Real Prop. 874 Gartel Drive, Walnut, Cal*.,
    79 F.3d 918 (9th Cir. 1996) ............................................................. 10

*United States v. Real Prop. Known As 22249 Dolorosa St., Woodland*
    *Hills, Cal*.,
    167 F.3d 509 (9th Cir. 1999) ........................................................... 16

*United States v. Rubio*,
    727 F.2d 786 (9th Cir. 1983) ........................................................... 10

*United States v. Saterstad*,
    2019 WL 1308387 (D. Nev. Mar. 22, 2019), *aff'd*, 852 F. App'x 250
    (9th Cir. 2021) ................................................................................ 12

*United States v. Trejo*,
    610 F.3d 308 (5th Cir. 2010).......................................................11, 12

*United States v. Two Condominiums Located at 465 Ocean Drive,*
    *Units 315 & 316, Miami Beach, Fla. 33139*,
    2021 WL 3810273 (N.D. Cal. Aug. 26, 2021)...............................8, 15

*United States v. Zapata*,
    497 F.2d 95 (5th Cir. 1974) ............................................................. 13

CLAIMANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINTS

**Federal Statutes**

18 U.S.C.
    § 2 ................................................................................................. 7
    § 371 ........................................................................................... 4, 6
    § 545 ..................................................................................... *passim*
    § 981 ............................................................................................. 8
    § 981(a)(1)(A) ....................................................................... *passim*
    § 981(a)(1)(C) ................................................................ 6, 7, 21, 23, 24
    § 982(a)(1) ................................................................................... 6
    § 983(a)(3)(C) ............................................................................. 20
    § 983(c)(3) ................................................................................. 15
    § 1343 ..................................................................................... 4, 7, 9
    § 1956(a)(2)(A) ..................................................................... *passim*
    § 1956(c)(7) ............................................................................. 9, 22
    § 1961(1) ..................................................................................... 9

19 U.S.C.
    § 1595a(a) ........................................................................... *passim*

28 U.S.C.
    § 2461(c) ................................................................................. 6, 22

**Other Authorities**

Fed. R. Civ. P. 12(b) ....................................................................... 7, 25

Fed. R. Civ. P. Title XIII, Supplemental
    Rule G(2) ..................................................................................... 8
    Rule G(8)(b)(i) .............................................................................. 7

Federal Rule of Criminal Procedure 32.2 ............................................ 25

# I.   __INTRODUCTION__[1]

In its *third* attempt to obtain forfeiture of the Warehouses, the government—now relying on the allegations contained in the Indictment—alleges that the Warehouses are forfeitable under 18 U.S.C. § 981(a)(1)(A) as real property "involved in" violations of the international promotional money laundering statute, 18 U.S.C. § 1956(a)(2)(A).  (FAC, ¶ 33.)  Nothing in the Indictment or the First Amended Complaint ("FAC") supports the government's new forfeiture theory.  On its face, the FAC does not allege that the Warehouses are forfeitable as real property "traceable to" violations of 18 U.S.C. § 1956(a)(2)(A).  In other words, the government appropriately concedes that there is no evidence to support a theory of forfeiture based on tracing, and that it is relying solely on a theory that the Warehouses constitute real property "involved in" violations of 18 U.S.C. § 1956(a)(2)(A) in seeking forfeiture under 18 U.S.C. § 981(a)(1)(A).  As discussed below, the Warehouses were not "involved in" any *transactions* in violation of 18 U.S.C. § 1956(a)(2)(A).  To the contrary, the FAC makes it factually impossible for the government to obtain forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(A).  This is true irrespective of the fact that the Perfectus Defendants and Warehouse Defendants' were convicted of wire fraud and customs fraud, the requisite "specified unlawful activity" alleged in the FAC.  Furthermore, the Court should dismiss the FAC as the government is now barred from obtaining forfeiture of the Warehouses by the doctrines of res judicata and judicial estoppel.  Accordingly, Claimants Scuderia Development, LLC, 1001 Doubleday, LLC, Von Karman – Main Street, LLC, and 10681 Production Avenue, LLC (collectively,

---

[1] The FACs filed by the government contain virtually identical factual allegations. For the sake of clarity, unless otherwise indicated, all references to "FAC" refer to the FAC in case number 17-CV-1592.  When necessary, references to the FAC in the three other cases will include the last four digits of the case number, e.g. "FAC-1872", "FAC-1873", or "FAC-1875".

the "Claimants") respectfully move to dismiss the FACs in their entirety without leave to amend.  Considering that the government has not and cannot allege a viable theory of forfeiture over the Warehouses—despite having *three* opportunities to do so—leave to amend should not be granted.  *See Roth v. Garcia Marquez*, 942 F.2d 617, 628 (9th Cir. 1991).

## II.    STATEMENT OF FACTS[2]

### A.    The Warehouses

On October 27, 2008, Claimant 1001 Doubleday, LLC purchased a 394,000 square foot warehouse located at 1001 South Doubleday Avenue, Ontario, California (the "Ontario Warehouse").  (FAC-1873, ¶ 21; Indictment, ¶ 20.)  The FAC alleges that the Ontario Warehouse was purchased for approximately $32 million with funds received from unidentified Hong Kong bank accounts controlled by Zhongtian Liu ("Liu") and Zhaohua Chen ("Chen").  (FAC-1873, ¶ 21.)

On March 31, 2009, Claimant Von Karman – Main Street, LLC purchased a 260,000 square foot warehouse located at 2323 Main Street, Irvine, California (the "Irvine Warehouse") using funds held in a Cathay bank account in the name of Scuderia Development LLC ending in 5116 ("Cathay Account 5116").  (FAC, ¶ 21; Indictment, ¶ 21.)  The Irvine Warehouse was purchased for approximately $31.97 million, using funds received in the Cathay Account 5116 between January 2009 and March 2009 from Hong Kong bank accounts controlled by Liu and Chen. (FAC, ¶ 21.)

On September 11, 2009, Claimant 10681 Production Avenue, LLC purchased a 1,100,000 square foot warehouse located at 10681 Production Avenue, Fontana, California (the "Fontana Warehouse") using funds held in Cathay Account 5116.

---

[2] Claimants hereby summarize the allegations contained in the four FACs and the Indictment, incorporated into the FACs by reference, as is required for purposes of this motion.  Should the Court decline to grant this motion in whole or in part, Claimants reserve the right to contest all allegations at trial.

(FAC-1872, ¶ 21; Indictment, ¶ 22.)  The Fontana Warehouse was purchased for approximately $52 million using funds received in the Cathay Account 5116 in August 2009 from Hong Kong bank accounts controlled by Liu and Chen.  (FAC-1872, ¶ 21.)

On October 29, 2014, Claimant Scuderia Development, LLC purchased a 600,000 square foot warehouse located at 14600 Innovation Drive, Riverside, California (the "Riverside Warehouse") using funds held in Cathay Account 5116. (FAC-1875, ¶ 21; Indictment, ¶ 19.)  The Riverside Warehouse was purchased for approximately $43.5 million using funds received in the Cathay Account 5116 in October 2014 from Hong Kong bank accounts controlled by Liu and Chen.  (FAC-1875, ¶ 21.)

The FACs and Indictment allege that Claimants, at the direction of Liu, purchased the Ontario Warehouse, Irvine Warehouse, Fontana Warehouse and Riverside Warehouse (collectively, the "Warehouses") to store and stockpile aluminum extrusions, and later the aluminum pallets, purchased by Perfectus from CZW in "furtherance of the charged wire and customs fraud scheme."  (FAC, ¶¶ 20, 31; Indictment, ¶¶ 33(i), (j), (u), (x), (bb), Overt Act Nos. 7, 9, 12, 78-79.)

**B.    The Perfectus Entities**

From 2008 through 2014, Johnson Shao, at the direction of Liu, managed certain entities incorporated in California between January 2004 and August 2010. (FAC, ¶ 10; Indictment, ¶ 11.)  Among those entities were Pengcheng Aluminum Enterprise, Inc. ("PCA") and Transport Aluminum, Inc. ("TCI").  (*Id*.)  On or about July 28, 2006, a bank account ending in 9191 in the name of PCA was opened at Cathay Bank in the City of Industry, California ("PCA Account").  (Indictment, ¶ 13.)  Four years later, on or about August 26, 2011, a bank account ending in 2058 in the name of TCI was opened at the same bank ("TCI Account").  (*Id*. ¶ 14.)

C.     **The Alston Entities**

Liu's wife Zhijie Jasmine Wang ("Wang") formed Alston International, Inc. dba Alston Asset Management in late 2013, and Alston International Investment Group, Inc. in 2014 (together, "Alston").  (FAC, ¶ 12.)  Alston, which operated out of the Irvine Warehouse, is a property management company used by the Liu family to manage their residential and commercial properties, including the Warehouses. (*Id*.)  The FAC alleges that Alston used a Cathay bank account ending in 5850 ("Cathay Account 5850") and a Chase bank account ending in 2768 ("Chase Account 2768") to transact business.  (*Id*.)

The FAC alleges that between May 2015 and September 2017, Cathay Account 5850 and Chase Account 2768 received payments from accounts located in Mexico and controlled by Aluminicaste for the operating and overhead expenses associated with the Warehouses, including property taxes, utilities, landscaping, and other maintenance expenses.  (FAC, ¶¶ 12, 14, 22-30.)

D.     **The Indictment and Convictions in the Criminal Matter**

On May 7, 2019, a Grand Jury returned an Indictment charging Liu, CZW, Chen, Shao, Perfectus and Claimants (also referred to herein as the "Warehouse Defendants") with violations of 18 U.S.C. § 371 (Conspiracy, Count One); 18 U.S.C. § 1343 (Wire Fraud, Counts Two through Ten); 18 U.S.C. § 545 (Passing False Papers through a Customhouse, Counts Eleven through Seventeen).  (FAC, ¶¶ 15-19.)  The Indictment also charged all the Defendants, except the Warehouse Defendants, with violations of 18 U.S.C. § 1956(a)(2)(A) (International Promotional Money Laundering, Counts Eighteen through Twenty-Four).  (*Id.*.)  Relevant here, Counts Eighteen through Twenty-Four were based on the wire transfers made to PCA Account 9191 from an account held in Hong Kong made on the following dates: June 5, 2014, July 3, 2014, July 16, 2014, July 25, 2014, August 5, 2014 and October 17, 2014.  (Indictment, ¶ 42.)  The Indictment alleges that these transactions were made to promote the carrying on of the "specified unlawful activity" of wire

fraud (Counts Two through Ten) and customs fraud (Counts Eleven through Seventeen).  (*Id.*)

The wire fraud charged in Counts Two through Ten is based on the following wire transmissions: (i) an email, dated May 13, 2014, from a CZW employee to Shao; (ii) a wire transfer, dated June 19, 2014, from Hong Kong to PCA Account 9191; (iii) a wire transfer, dated July 11, 2014, from the People's Republic of China ("PRC") to PCA Account 9191; (iv) a wire transfer, dated July 21, 2014, from the PRC to PCA Account 9191; (v) a wire transfer, dated August 5, 2014, from Hong Kong to PCA Account 9191; (vi) a wire transfer, dated August 6, 2014, from the PRC to PCA Account 9191; (vii) an email sent by Shao to an employee of CZW; (viii) a wire transfer, dated March 6, 2015, from the PRC to TCI Account 2058; and (ix) a wire transfer, dated April 6, 2015, from the PRC to TCI Account 2058.  (*Id.* at ¶ 38.)

The customs fraud charged in the Indictment is based on the passing of false Forms 7501 through a customhouse of the United States wherein Shao caused the customs broker to declare that the aluminum pallets were not subject to the 2011 AD/CVD Orders.  (*Id.* at ¶ 40.)  The charged offenses of customs fraud occurred on May 19, 2014, May 22, 2014, May 23, 2014, May 28, 2014, May 30, 2014, June 6, 2014, and June 27, 2014.  (*Id.*)

Notwithstanding the fact that the Warehouse Defendants were not charged or convicted on Counts Eighteen through Twenty-Four, the FAC alleges that the Warehouses were "involved in" one or more of the violations of international promotional money laundering, 18 U.S.C. § 1956(a)(2)(A), because the Warehouses were used to store aluminum extrusions and later aluminum pallets "in furtherance of the charged wire and customs fraud scheme."  (FAC, ¶¶ 20, 33.)  Significantly here, the FAC acknowledges that before the 2011 AD/CVD Orders took effect on May 26, 2011, Perfectus was importing aluminum extrusions into the United States. (FAC, ¶ 11(c); Indictment, ¶ 28.)  Furthermore, based on the allegations in the

Indictment, the charged wire fraud scheme was a scheme to defraud shareholders in CZW, which began trading on the Hong Kong Stock Exchange on May 8, 2009. (FAC, ¶ 7(d); Indictment, ¶ 5.)

### E.   The Government's Prior Attempts to Obtain Forfeiture of the Warehouses

Initially, the government pursued civil *in rem* forfeiture of the Warehouses under 19 U.S.C. § 1595a(a), which on its face, did not authorize forfeiture of real property.  Claimants successfully moved to dismiss the civil forfeiture actions after the Court rejected the government's overbroad interpretation of 19 U.S.C. § 1595a(a) as "self-evidently untrue."  (Dkt. 79.)  Concurrently, the government was also seeking criminal forfeiture of the Warehouses through the Indictment.  Similar to the FAC, Forfeiture Allegation Three in the Indictment sought criminal forfeiture pursuant to 18 U.S.C. § 982(a)(1) and 28 U.S.C. § 2461(c) in the event of a conviction for international promotional money laundering in violation of 18 U.S.C. § 1956(a)(2)(A).  (Indictment, Forfeiture Allegation Three.)  However, because the Indictment did not charge the Warehouse Defendants on Counts Eighteen through Twenty-Four for international promotional money laundering in violation of 18 U.S.C. § 1956(a)(2)(A), the government could not obtain criminal forfeiture of the Warehouses pursuant to Forfeiture Allegation Three.  Moreover, because this Court concluded that 19 U.S.C. § 1595a(a) did not authorize the forfeiture of real property and because forfeiture under 18 U.S.C. § 545 is limited to the "[m]erchandise introduced into the United States," the government conceded that it could not obtain forfeiture of the Warehouses pursuant to Forfeiture Allegation Two.  (RJN, Ex. 2.)

This left the government with only Forfeiture Allegation One.  In Forfeiture Allegation One, the Indictment sought forfeiture against the Warehouse Defendants pursuant to 18 U.S.C. § 981(a)(1)(C)—a civil forfeiture statute with nearly identical requirements as 18 U.S.C. § 981(a)(1)(A)—in the event that the Warehouse Defendants were convicted on Count One (conspiracy, in violation of 18 U.S.C. §

371) or Counts Two through Ten (wire fraud, in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 2). (Indictment, Forfeiture Allegation One.) To satisfy its burden under Forfeiture Allegation One, the government would have had to show by a preponderance of the evidence that the Warehouses either "constitute" or were "derived from proceeds" obtained directly or indirectly as a result of the conspiracy and wire fraud charged in the Indictment. *See* 18 U.S.C. § 981(a)(1)(C). Facing this burden, the government elected to drop all of the forfeiture allegations against the Warehouse Defendants. (RJN, Exs. 1, 3.) In doing so, the government effectively conceded that the Warehouses were not forfeitable under 18 U.S.C. § 981(a)(1)(C). Notably, in its initial bill of particulars, the government also sought forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A)—the same civil forfeiture statute alleged in the FAC. (RJN, Ex. 1.)

### III.   <u>LEGAL STANDARD</u>

A complaint for forfeiture *in rem* is subject to a heightened pleading standard, and must state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial. *See United States v. One White Crystal Covered Bad Tour Glove and Other Michael Jackson Memorabilia*, 2012 WL 8455336 at *2 (C.D. Cal. Apr. 12, 2012). A claimant may move to dismiss such a proceeding pursuant to Fed. R. Civ. P. 12(b). Fed. R. Civ. P. Title XIII ("Supp. Rules"), Rule G(8)(b)(i). Pursuant to Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b). In ruling on the motion, "the court is [not] required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

IV.   **ARGUMENT**

A.   **The FAC Fails to State a Claim for Forfeiture of the Warehouses Under Section 981(a)(1)(A)**

Supplemental Rule G(2) requires that a civil forfeiture complaint "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. Rules G(2)(f). As a threshold matter, the FAC does not allege that the Warehouses are subject to forfeiture as real property "traceable to" violations of 18 U.S.C. § 1956(a)(2)(A). *See generally* FAC, ¶¶ 1-33. By not asserting a forfeiture theory based on tracing and by failing to allege any facts to support tracing in the FAC, the government appropriately concedes that the Warehouses are not "traceable to" any money laundering transaction. *See United States v. Two Condominiums Located at 465 Ocean Drive, Units 315 & 316, Miami Beach, Fla. 33139*, 2021 WL 3810273, at *2 (N.D. Cal. Aug. 26, 2021) ("18 U.S.C. § 981 makes property "involved in" *or* "traceable to" conduct that violates various criminal statutes subject to forfeiture.") Thus, it can be reasonably inferred that there is no chain of evidence "linking the [Warehouses] back to the unlawful conduct" of money laundering. *Id*. at *3.

On its face, the FAC makes it factually impossible for the government to prove by a preponderance of the evidence its only theory of forfeiture under 18 U.S.C. § 981(a)(1)(A): that the Warehouses were "involved in" any of the violations of international promotional money laundering, 18 U.S.C. § 1956(a)(2)(A), alleged in the FAC or charged in the Indictment. To obtain forfeiture under 18 U.S.C. § 981(a)(1)(A), the government must allege sufficiently detailed facts to support a reasonable belief that the Warehouses were involved in a "violation of" 18 U.S.C. § 1956(a)(2)(A). (FAC, ¶ 33.) To commit a violation of 18 U.S.C. § 1956(a)(2)(A), a defendant must transport or attempt to transport a monetary instrument or funds from or through a place outside of the United States to a place in the United States with the intent to promote the carrying on of specified unlawful activity. *See* 18

U.S.C. § 1956(a)(2)(A).  The term "specified unlawful activity" includes "any act which is indictable" under 18 U.S.C. § 1343 (wire fraud) and "an offense" under 18 U.S.C. § 545 (passing false papers through a customhouse of the United States).  *See* 18 U.S.C. § 1956(c)(7); 18 U.S.C. § 1961(1).

Here, the government seeks forfeiture of the Warehouses based on the same wire fraud and customs fraud offenses charged in the Indictment for which Perfectus and the Warehouse Defendants were convicted.  However, the convictions for the specified unlawful activity are irrelevant for purposes of obtaining forfeiture under 18 U.S.C. § 981(a)(1)(A).  *See United States v. $405,089.23 U.S. Currency*, 122 F.3d 1285, 1289 (9th Cir. 1997) (holding the government must have probable cause to believe that the property is involved in the activity subject to the specific forfeiture statute it invokes); *United States v. Nicolo*, 597 F. Supp. 2d 342, 357 (W.D.N.Y. 2009) (concluding real property was not forfeitable where the government relied on activities related to fraud offenses as opposed to money laundering because "it is the money laundering, not the fraud, that forms the basis for the government's forfeiture").  Rather, for the Warehouses to be forfeitable under 18 U.S.C. § 981(a)(1)(A) as real property "involved in" a violation of 18 U.S.C. § 1956(a)(2)(A), the Warehouses must either be "property that is itself being laundered" or "property used to facilitate a money laundering offense." *In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 561–62 (S.D.N.Y. 2011) (finding a building is not forfeitable as property "involved in" money laundering where it was not involved in the money laundering itself); *United States v. All Monies ($477,048.62) In Acct. No. 90-3617-3, Israel Disc. Bank, New York, N.Y.*, 754 F. Supp. 1467, 1473 (D. Haw. 1991) (citing 134 Cong. Rec. S173-65 (Nov. 10, 1988)) (recognizing that the term "property involved" is intended to include the money or other property being laundered (the corpus), any commissions or fees paid to the launderer, and any property used to facilitate the laundering offense").  For these reasons, the relevant inquiry here is whether the Warehouses were "involved

in" any **transactions** in violation of 18 U.S.C. § 1956(a)(2)(A).  The FAC fails to identify any international promotional money laundering transaction that the Warehouses were involved in.

       1.   <u>The Warehouses Were Not Involved in the Transactions Charged in the Indictment</u>

Counts Eighteen through Twenty-Four were based on the wire transfers made to PCA Account 9191 from an account held in Hong Kong made on the following dates: June 5, 2014, July 3, 2014, July 16, 2014, July 25, 2014, August 5, 2014 and October 17, 2014.  (*See* Indictment, at ¶ 42.)  The Warehouse Defendants were not charged or convicted of these money laundering transactions.  For this reason, it would be disingenuous for the government to now allege that the Warehouses were involved in these transactions.  The allegations in the FAC further this conclusion. In the FAC, the government alleges that the Warehouses were purchased using a bank account in the name of Scuderia Development, LLC.  (FAC, ¶ 21; FAC-1872, ¶ 21; FAC-1873, ¶ 21, or FAC-1875, ¶ 21.)  By contrast, the money laundering transactions involved PCA Account 9191, an account owned by Perfectus, which is not even mentioned in the FAC.  (Indictment, ¶ 42.)  Moreover, the maintenance payments alleged in the FAC occurred after all of the money laundering transactions charged in the Indictment and related to wire transfers from Mexico to Alston's bank accounts, namely, Cathay Account 5850 and Chase Account 2768.  (FAC, ¶¶ 23-30.)  Accordingly, the Warehouses were not involved in the underlying money laundering transactions charged in Counts Eighteen through Twenty-Four.[3]

---

[3] Civil *in rem* forfeiture requires the government establish probable cause that the defendant property was involved in the alleged underlying offense.  *See United States v. Real Prop. 874 Gartel Drive, Walnut, Cal*., 79 F.3d 918, 922–23 (9th Cir. 1996).  Notably, given that the Indictment did not charge the Warehouse Defendants with international promotional money laundering, it is suspect as to whether the government had probable cause when it filed the FAC seeking civil forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(A).  *See United States v. Rubio*, 727

2. <u>The Wire Transfers Relating to the Purchasing of the Warehouses Do Not Support Forfeiture</u>

The FAC alleges that the Warehouses were purchased with funds transferred from Hong Kong bank accounts controlled by Liu and Chen to bank accounts held in the name of Scuderia Development, LLC.  To obtain forfeiture of the Warehouses under 18 U.S.C. § 981(a)(1)(A), "the government must show the transaction at issue was conducted with the intent to promote the carrying on of a specified unlawful activity." *United States v. Trejo*, 610 F.3d 308, 314–16 (5th Cir. 2010) (emphasis added); *Michael Jackson Memorabilia*, 2012 WL 8455336, at *4 (citing *United States v. Rogers*, 321 F.3d 1226, 1229 (9th Cir.2003)) (finding the government failed to plead a forfeiture claim based on money laundering where the complaint did not state facts showing that the transactions were connected to the specified unlawful activity).

Strict adherence to the rigorous "specific intent to promote" requirement under § 1956(a)(2)(A) "ensure[s] that the money laundering statute will punish conduct that is really distinct from the underlying specified unlawful activity and will not simply provide overzealous prosecutors with a means of imposing additional criminal liability any time a defendant makes benign expenditures with funds derived from unlawful acts." *Trejo*, 610 F.3d at 314–16.  Here, accepting the allegations in the FAC as true, not only does the FAC fail to sufficiently allege the "specific intent to promote the carrying on of specified unlawful activity" element, the allegations actually make it impossible for the government to show that the wire transfers made for the purposes of purchasing the Warehouses were completed to promote the carrying on of the charged wire fraud and customs fraud.  In other words, the FAC has an incurable timing problem.

---

F.2d 786, 794 (9th Cir. 1983) ("The function of the grand jury is to determine whether there is sufficient probable cause."); FAC, ¶¶ 15, 19.

The FAC alleges that Liu purchased the Warehouses to promote the customs fraud scheme.  (FAC, ¶ 31.)  However, the dates of the wire transfers relating to the purchasing of the Warehouses renders such an inference wholly unreasonable.  The customs fraud charged in the Indictment is premised on the passing of false and fraudulent papers through a customhouse in the United States by claiming that the aluminum pallets were not subject to the 2011 AD/CVD Orders.  (*Id*. at ¶ 7.)  The 2011 AD/CVD Orders took effect on May 26, 2011 after the Department of Commerce ("DOC") announced its investigation in April 2010.  (*Id*.; Indictment, ¶¶ 27-28.)  As a matter of common sense, a transaction cannot be made "with the intent to promote the carrying on of a specified unlawful activity" when the "specified unlawful activity" does not exist.  Here, the Ontario Warehouse, the Irvine Warehouse and the Fontana Warehouse were all purchased *before* the DOC even announced its investigation related to the 2011 AD/CVD Orders in April 2010.  For this reason, the alleged wire transfers in 2008 and 2009 from Hong Kong to the United States of the funds used to purchase the Ontario Warehouse, Irvine Warehouse and Fontana Warehouse were not completed with the intent to promote the carrying on of the customs fraud charged in the Indictment.  *See United States v. Goldtooth*, 754 F.3d 763, 769 (9th Cir. 2014) ("one cannot know in advance what cannot be known in advance").

The FAC also fails to allege facts to support the government's theory of forfeiture that the Riverside Warehouse was "involved in" the charged customs fraud.  For property to be "involved in" a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(A), the property must be used to "facilitate" the commission of money laundering.  *See All Monies ($477,048.62) in Account No. 90–3617–3*, 754 F. Supp. at 1472–73 (interpreting "involved in" under 18 U.S.C. § 981(a)(1)(A) as authorizing the forfeiture of property that ***facilitates the commission*** of money laundering in violation of 18 U.S.C. § 1956) (emphasis added); *United States v. Saterstad*, 2019 WL 1308387, at *4 (D. Nev. Mar. 22, 2019), *aff'd*, 852 F.

App'x 250 (9th Cir. 2021) ("Property is forfeitable if it was "used" or "intended to be used" to commit, or to facilitate the commission of, a criminal offense."). Relevant here, the "commission" of a violation of 18 U.S.C. § 545 for passing false and fraudulent papers through a customhouse of the United States occurs at the time of importation.  *See United States v. Zapata*, 497 F.2d 95, 97–98 (5th Cir. 1974) (the government must prove at the time of importation that the defendant unlawfully imported a controlled substance); *BASF Corp. v. United States*, 30 C.I.T. 227, 250 (2006), *aff'd*, 497 F.3d 1309 (Fed. Cir. 2007) (recognizing the established rule in customs jurisprudence that the court must classify articles based upon their condition as imported).  The last customs fraud count charged in the Indictment was committed on July 27, 2014.  (Indictment, ¶ 40.)  In contrast, the Riverside Warehouse was purchased on October 28, 2014.  Of course, one cannot "carry on" or "promote" an offense that has already been completed.[4]  Therefore, the subsequent wire transfers sent from Hong Kong to the United States for the purpose of purchasing the Riverside Warehouse were not done with the intent to "promote" the "carrying on" of the charged customs fraud.

---

[4] The Court's interpretation of 19 U.S.C. § 1595a(a) is instructive.  Section 1595a(a), entitled "Aiding unlawful importation," authorizes forfeiture of "every vessel, vehicle, animal, aircraft, or other thing used in, to aid in, or to facilitate, by obtaining information or in any other way, the importation, bringing in, unlading, landing, removal, concealing, harboring, or subsequent transportation of any article which is being or has been introduced, or attempted to be introduced, into the United States contrary to law …."  19 U.S.C. § 1595a(a).  But, as the Court determined, this statute does not authorize forfeiture of real property.  From this, it logically follows that "real property" cannot aid in" or "facilitate" the unlawful importation of merchandise introduced into the United States contrary to law.  Moreover, a violation of 18 U.S.C. § 545 occurs at the time of importation, namely, when the allegedly false form is passed through a customhouse of the United States.  Thus, the subsequent storage of the aluminum extrusions and aluminum pallets after the pallets were imported into the United States cannot "facilitate" the "commission" of an already completed customs fraud violation.

In addition, the FAC fails to allege sufficiently detailed facts to support a reasonable belief that the Warehouses were purchased with the intent to promote the charged wire fraud scheme, which is alleged to have begun in 2009.  (FAC, ¶¶ 7(b), 31.)  The charged wire fraud scheme is based on a scheme to defraud foreign investors in CZW.  (*Id*. at ¶ 7(d).)  The Indictment alleges that CZW became publicly listed on the Hong Kong Stock Exchange on May 8, 2009 following the issuance of its IPO prospectus on April 24, 2009.  (Indictment, ¶ 5, Overt Act No. 10.)  The FAC then alleges that, by stockpiling the aluminum extrusions at the Warehouses before the 2011 AD/CVD Orders, the Warehouses facilitated the wire fraud scheme by helping to inflate the value of CZW.  (FAC, ¶ 7(c).)  Yet, in the Indictment, the government concedes that Perfectus sold these aluminum extrusions to third-party customers.  (Indictment, ¶ 33(x).)  Again, the FAC has an incurable timing problem.  The Ontario Warehouse and Irvine Warehouse were purchased on October 27, 2008 and March 31, 2009, respectively.  (FAC, ¶ 21; FAC-1873, ¶ 21.)  At that time, CZW had no investors to defraud as it had yet to issue its IPO prospectus or shares on the Hong Kong Stock Exchange.  Again, as a matter of common sense, the Court should find that the Ontario Warehouse and Irvine Warehouse were not purchased with the "intent to promote the carrying on" of the charged wire fraud scheme to defraud investors in CZW in light of the fact that **there were no investors in CZW to defraud** when the wire transfers made for the purchasing of the Ontario Warehouse and Irvine Warehouse were completed.

The FAC also fails to allege sufficiently detailed facts to support a reasonable belief that the Fontana Warehouse and Riverside Warehouse were purchased with the intent to carry on the charged wire fraud scheme.  The Fontana Warehouse was purchased on September 11, 2009.  (Indictment, ¶ 22.)  At that time, the Fontana Warehouse was used to store the aluminum extrusions imported by Perfectus from the PRC, which the government concedes were sold to legitimate third-party customers.  (*Id*. at ¶ 32(x).)  Likewise, the Fontana Warehouse was purchased six

months before CZW issued its first annual report in April 2010.  (*Id.* at Overt Act No. 14.)  Accepting the FAC's allegations as true, the Court should find that the wire transfers made for the purchasing of the Fontana Warehouse were not done with the "intent to promote the carrying on" of the wire fraud scheme as CZW had not yet released an annual report.

Finally, the wire transfers completed for the purpose of purchasing the Riverside Warehouse in October 2014 do not support the government's theory of forfeiture under 18 U.S.C. § 981(a)(1)(A).  Where, as here, the government's "theory of forfeiture is that the property was … ***involved in*** the commission of a criminal offense, the [g]overnment shall establish that there was a substantial connection between the property and the offense.  *See* 18 U.S.C. § 983(c)(3) (emphasis added); *see Two Condominiums,* 2021 WL 3810273, at *7 (dismissing *in rem* civil forfeiture complaint where the government's allegations were too vague to plausibly connect the alleged unlawful activity to the relevant transaction).  Here, the FAC fails to allege sufficiently detailed facts to connect the purchasing of the Riverside Warehouse to any money laundering transaction allegedly related to the charged wire fraud scheme to defraud CZW's shareholders across the globe who invest in a foreign company traded on a foreign stock exchange.

3.      The Wire Transfers Relating to the Maintenance Payments for the Warehouses

The FAC alleges that between May 2015 and September 2017, the Alston Cathay Account 5850 and Alston Chase Account 2768 collectively received approximately $29 million from accounts located in Mexico controlled by Aluminicaste.  (FAC, ¶¶ 12, 14, 22-30.)  The FAC then alleges particular payments made from the Alston accounts in 2015, 2016 and 2017 were used to pay for operating and overhead expenses associated with the Warehouses, including property taxes, utilities, landscaping, and other maintenance expenses.  (*Id.*)  These allegations, however, do not render the Warehouses forfeitable under 18 U.S.C. §

981(a)(1)(A).  As stated above, forfeiture under 18 U.S.C. § 981(a)(1)(A) requires the FAC to allege sufficiently detailed facts to show that the transactions were completed with the intent to promote the specified unlawful activity.  Here, because the FAC alleges that the underlying specified unlawful activity is based on the wire fraud and customs fraud "for which Perfectus and the Warehouse LLCs were convicted," the government cannot show that the maintenance payments made in 2015, 2016 and 2017 were done "with the intent to promote" or "in furtherance of" the "charged wire and customs fraud."  (FAC, ¶¶ 20, 33.)  Based on the Indictment, the wire fraud ended on April 6, 2015 (Count Ten), and the customs fraud ended on June 27, 2014 (Count Seventeen).  (Indictment, ¶¶ 38, 40.)  In contrast, the FAC alleges that the first maintenance payment occurred on September 1, 2015.  (FAC, ¶ 23.)  A transaction cannot "promote," "further" or "carry on" a crime after the commission of the crime has been fully completed.

Furthermore, courts routinely reject the notion that payments made for general business expenditures "promote" crime even where the business itself is used to defraud.  *See, e.g., United States v. Real Prop. Known As 22249 Dolorosa St., Woodland Hills, Cal*., 167 F.3d 509, 514 (9th Cir. 1999) (concluding that the real property was not forfeitable in light of the absence of evidence linking the property to the illegal drug transactions); *United States v. McGahee*, 257 F.3d 520, 526–27 (6th Cir. 2001) (holding that to further a criminal activity, the transaction must be explicitly connected to the mechanism of the crime); *United States v. Brown*, 186 F.3d 661, 669–70 (5th Cir. 1999) (payments on business expenses for an automobile dealership that engages in fraudulent activity does not support the promotion prong); *United States v. Jackson*, 935 F.2d 832, 840–42 (7th Cir.1991) (cell phones, even though they might have been used in drug trafficking, could also be a legitimate business expense and therefore did not promote the crime).  Thus, the allegations in the FAC related to business expenses and maintenance payments

made after the charged wire fraud and customs fraud were completed do not subject the Warehouses to forfeiture under 18 U.S.C. § 981(a)(1)(A).[5]

**B.      The FAC is Barred by the Doctrine of Res Judicata**

The Court also should dismiss the FAC because the government is barred by the doctrine of res judicata from seeking civil *in rem* forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(A).  The doctrine of res judicata "is motivated primarily by the interest in avoiding repetitive litigation, conserving judicial resources, and preventing the moral force of court judgments from being undermined."  *Int'l Union of Operating Engineers-Emps. Const. Indus. Pension, Welfare & Training Tr. Funds v. Karr*, 994 F.2d 1426, 1430–31 (9th Cir. 1993). For this reason, res judicata bars not only all claims that were actually litigated, but also all claims that "*could have been asserted*" in the prior action.  *Id*. (emphasis added).  Here, nothing precluded the government from seeking forfeiture of the Warehouses in the related criminal matter pursuant to 18 U.S.C. § 981(a)(1)(A).  As such, because the government "could have asserted" that the Warehouses are forfeitable under 18 U.S.C. § 981(a)(1)(A), the FAC should be dismissed as barred under the doctrine of res judicata.

Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties."  *United States v.*

---

[5] In each FAC, the government concedes that all of the Warehouses were paid in full upon purchase.  As such, no mortgage payments were made on the Warehouses in 2015, 2016 or 2017.  To allow the government to obtain forfeiture of the Warehouses—purchased in full for a collective sum of approximately $159,470,000—because $7,410,000 was thereafter paid by Alston for the expenses related to the Warehouses between 2015 and 2017 would be grossly disproportionate to the money laundering transactions alleged in the FAC.  (FAC, ¶¶ 26, 29, 30.)  Indeed, the government would obtain a windfall of approximately $152,060,000, which would be unconstitutional under the Eighth Amendment.  *See United States v. Bajakajian*, 524 U.S. 321, 323 (1998) (holding the amount of the forfeiture must bear some relationship to the gravity of the offense, and limiting the forfeiture amount from $350,000 to $15,000).

*Liquidators of Eur. Fed. Credit Bank*, 630 F.3d 1139, 1150 (9th Cir. 2011) ("*Liquidators*"); *United States v. Banco Intrenacional/Bital S.A.*, 110 F. Supp. 2d 1272, 1280 (C.D. Cal. 2000) ("The claim preclusive effect of successive *in rem* and *in personam* proceedings is a well-settled aspect of the doctrine."). Here, the "privity between parties" is met because "although the nominal defendant in a criminal forfeiture action (the criminal defendant) is different from the nominal defendant in a civil forfeiture action (the property itself), the interested party in both actions is identical: the owner of the property. And, of course, the government is the plaintiff in both actions." *Liquidators*, 630 F.3d at 1150. Thus, because Claimants and the government are the same parties in both these civil forfeiture proceedings and the criminal matter, this element is satisfied.

The "identity of claims" element requires courts to consider four factors: (i) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (ii) whether substantially the same evidence is presented in the two actions; (iii) whether the two suits involve infringement of the same right; and (iv) whether the two suits arise out of the same transactional nucleus of facts. *See Liquidators*, 630 F.3d at 1150–51. While all four factors support the "identity of claims" element, the fourth factor—whether the two suits arise out of the same transactional nucleus of facts—is the most important. *Id*. at 1151, n. 7.

Here, it is beyond dispute that the FAC arises from the same transactional nucleus of facts as the criminal case. Indeed, the FAC alleges the same facts as the Indictment, and the FAC expressly incorporates all of the allegations of the Indictment therein. The Warehouse ownership rights free from forfeiture claims, which was established by the government's voluntary relinquishment of any forfeiture rights, would be upended by prosecution of these proceedings. Moreover, the government cannot reasonably assert that it will not rely on "substantially the same evidence" presented to the jury in the criminal matter to support its amended

theory of forfeiture under 18 U.S.C. § 981(a)(1)(A), nor can it dispute that the two suits involve the infringement of the same right, namely, ownership of the Warehouses.  *Id*.  Therefore, the "identity of claims" element is satisfied.

The Court should find that the government's filing of its amended bill of particulars—wherein the government effectively conceded that it could not obtain forfeiture of the Warehouses—equates to a final judgment on the merits for purposes of res judicata.  "Once a bill of particulars is issued, the government is strictly limited to the particulars it has specified within and cannot thereafter amend and expand the charges against defendants." *United States v. Lee*, 2009 WL 724042, at \*3 (N.D. Cal. Mar. 18, 2009).  Following this Court's dismissal of the initial civil forfeiture complaint, the government dismissed all of the forfeiture allegations against the Warehouse Defendants in the criminal action.  Notably, in its initial bill of particulars, the government expressly sought forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(A) – the same civil forfeiture statute alleged in the FAC.  (RJN, Ex. 1.)  Yet, on the eve of the criminal trial, the government filed an amended bill of particulars wherein it expressly removed the Warehouses from the list of forfeitable property in the criminal action.  (RJN, Ex. 3.)

Here, because the government is limited to the particulars it specifies in a bill of particulars and cannot thereafter expand such particulars, *Lee*, 2009 WL 724042, at \*3, the government's amendment to the bill of particulars filed in the criminal action has the same practical effect as a dismissal with prejudice.  *See, e.g., Samuels v. Northern Telecom, Inc.*, 942 F.2d 834, 836 (2d Cir. 1991) (stipulation dismissing an action with prejudice as claim preclusion); *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (a bill of particulars functions to enable a defendant to plead his acquittal or conviction in bar of another prosecution for the same offense).

By further analogy, "[d]enial of leave to amend in a prior action" constitutes a final judgment on the merits for purposes of res judicata. *Mpoyo v. Litton Electro-*

*Optical Sys.*, 430 F.3d 985, 989 (9th Cir. 2005) (res judicata bars subsequent filing of claims after a party is denied leave to amend); *Marin v. HEW, Health Care Financing Agency,* 769 F.2d 590, 593 (9th Cir. 1985) (denial of the motion to amend constitutes a final judgment on the merits for purposes of res judicata). Where, as here, the government submits an amended bill of particulars on the eve of trial, the government is not permitted to further amend its charges beyond those specified once trial has commenced. *Lee*, 2009 WL 724042, at *3. This is the functional equivalent of a denial of leave to amend, constituting a final judgment on the merits for the purposes of res judicata.

Accordingly, the Court should dismiss the FAC as barred under the doctrine of res judicata because the government "could have asserted" that the Warehouses were forfeitable under 18 U.S.C. §§ 981(a)(1)(A) in the Indictment. *See* 18 U.S.C. § 983(a)(3)(C) (providing that the government may include a civil forfeiture allegation in a criminal indictment); *see also Banco*, 110 F. Supp. 2d at 1280 (res judicata barred the government's subsequent civil penalty claim when it had a full and fair opportunity to litigate this claim in the prior civil forfeiture action). Indeed, this is precisely what the government initially did in the criminal action prior to amending its bill of particulars. (RJN, Ex. 1.) The government therefore should now be precluded from seeking forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(A) under the doctrine of res judicata as it already had a full and fair opportunity to litigate these claims in the criminal action.

### C.   The FAC is Barred by the Doctrine of Judicial Estoppel

Judicial estoppel serves to prohibit a party from gaining an advantage by taking one position and then seeking a second advantage by taking a different position that is incompatible with the first. *See United States v. Ibrahim*, 522 F.3d 1003, 1009 (9th Cir. 2008) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997). Here, the Court should exercise its discretion and judicially estop the government from seeking

forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(A).  *See Dzakula v. McHugh*, 746 F.3d 399, 402 (9th Cir. 2014) (affirming district court's dismissal of plaintiff's complaint on the grounds of judicial estoppel).  When determining whether judicial estoppel is warranted, courts consider three factors: (i) whether "a party's later position must be 'clearly inconsistent' with its earlier position;" (ii) whether the party succeeded in its prior position, because "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations;'" and (iii) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *United States v. Kim*, 806 F.3d 1161, 1167 (9th Cir. 2015).  All of these factors support the application of judicial estoppel  in light of the government's assertion of incompatible statements in the criminal action and these civil forfeiture proceedings. *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996).

On the eve of trial in the criminal case, the government took the position that the Warehouses could only be forfeitable under 19 U.S.C. § 1595a(a).  The government's forfeiture trial memorandum and bills of particulars filed in the criminal action are telling.  In its trial memorandum, the government conceded that it was "unclear whether there will actually be a forfeiture phase involving the Warehouses" in light of the legal question then-pending before this Court as to the proper statutory interpretation of 19 U.S.C. § 1595a(a).  (RJN, Ex. 2, at 10.)  Once the Court rejected the government's overbroad interpretation of 19 U.S.C. § 1595a(a), the government then dismissed all forfeiture allegations against the Warehouses, even though Forfeiture Allegation One—which sought forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(C), permitting forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. §545 … or §1344 … or any offense constituting 'specified

1   unlawful activity' (as defined in § 1956(c)(7)), or a conspiracy to commit such an

2   offense"—was undisturbed by the Court's ruling on Claimants' motion to dismiss.

3        Notwithstanding, the government now asserts that the Warehouses are subject

4   to forfeiture under 18 U.S.C. § 981(a)(1)(A) as real property "involved in" a

5   violation of the international promotional money laundering statute, 18 U.S.C. §

6   1956(a)(2)(A), despite the fact that the Warehouse Defendants were neither charged

7   nor convicted of any violation of the money laundering statute.  The clear

8   inconsistency of the government's present position is further exemplified by

9   comparing the initial bill of particulars with the amended bill of particulars filed in

10  the criminal action.  In the initial bill of particulars, the government sought

11  forfeiture of the Warehouses "pursuant to the forfeiture allegations set out in the

12  Indictment and 18 U.S.C. §§ 981 (a)(1)(A) & (C), 982; 545; 19 U.S.C. § 1595a(a);

13  and 28 U.S.C. § 2461(c)."  (RJN, Ex. 1.)  Five days after the Court's ruling on the

14  scope of 19 U.S.C. § 1595a(a), the government dropped the Warehouses from the

15  list of forfeitable property in its amended bill of particulars.  (RJN, Ex. 3.)  In sum,

16  the first factor weighs in favor of judicial estoppel because the government's current

17  theory that the Warehouses are forfeitable as real property "involved in" a money

18  laundering transaction is clearly inconsistent with its prior statements and actions in

19  the criminal action wherein it took the position that the Warehouses could only be

20  forfeitable under 19 U.S.C. § 1595a(a).  *See Liquidators*, 630 F.3d at 1149 (judicial

21  estoppel warranted where the government raised directly contradictory positions);

22  *see also Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) ("If people 'must turn

23  square corners when they deal with the government, it cannot be too much to expect

24  the government to turn square corners when it deals with them.'")

25        The second factor looks to whether the previous court relied on or accepted

26  the party's prior inconsistent position.  *See Hamilton v. State Farm Fire & Cas. Co*.,

27  270 F.3d 778, 783 (9th Cir. 2001).  For example, in *Hamilton*, the Ninth Circuit

28  barred the plaintiff "from pursuing claims about which he had knowledge, but did

not disclose, during his bankruptcy proceedings," and found that "a discharge of debt by a bankruptcy court … is sufficient acceptance to provide a basis for judicial estoppel." *Id*. at 784.  The Ninth Circuit then held that a court may "accept" the plaintiff's assertions in many ways, such as lifting a stay or approving a course of action based on the assertions. *See id*.  This case is analogous to *Hamilton*.  In the criminal action, the government could have pursued civil forfeiture of the Warehouses pursuant to 18 U.S.C. § 981 (a)(1)(A) and 18 U.S.C. § 981(a)(1)(C), but elected not to do so after this Court issued its ruling on Claimants' motion to dismiss.  (RJN, Exs. 1-4); *Gagne v. Zodiac Mar. Agencies, Ltd.*, 274 F. Supp. 2d 1144, 1149 (S.D. Cal. 2003) (noting judicial estoppel forecloses duplicitous results).  As a result—and in acceptance of the government's decision not to pursue the forfeiture of the Warehouses—the criminal trial court released its empaneled jury prior to the adjudication of the still pending forfeiture allegations.  (RJN, Ex. 4.)  It did so upon the acceptance of the Perfectus Defendants' written stipulation—a stipulation that the Warehouse Defendants were not a part of.  (*Id*.)  This constitutes judicial acceptance of the government's prior inconsistent position that the Warehouses could only be forfeitable under 19 U.S.C. § 1595a(a).  Therefore, the second factor weighs in favor of judicial estoppel.

Finally, the government will derive an unfair benefit if not judicially estopped from seeking forfeiture under 18 U.S.C. § 981(a)(1)(A).  This is the government's third attempt at obtaining forfeiture of the Warehouses.  It would be entirely unfair to "overlook what the government now wishes it had not stated" in "affirmatively and forcefully advanc[ing] a position clearly inconsistent with its current position." *Liquidators*, 630 F.3d at 1149.  Indeed, the purpose of judicial estoppel is to protect the integrity of the judicial process by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 750.  Here, the government's position in the criminal case was prompted by: (i) this Court's interpretation of 19 U.S.C. § 1595a(a), which the government

previously conceded was the only statute under which it could obtain forfeiture of the Warehouses; (ii) the fact that it knew it could not obtain forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(A) because the Warehouse Defendants were not charged with international promotional money laundering in violation of 18 U.S.C. § 1956(a)(2)(A); and (iii) its knowledge that it could not obtain forfeiture of the Warehouses pursuant to 18 U.S.C. § 981(a)(1)(C) as it could not prove that the Warehouses constitute or were derived from "proceeds" traceable to Counts One through Ten as required under Forfeiture Allegation One.

After implicitly acknowledging these legal and factual obstacles to forfeiture in its criminal prosecution by dropping the forfeiture allegations against the Warehouses, the government now abruptly changes its position again by claiming, for the first time, that the Warehouses are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A) as real property "involved in" a money laundering transaction, while also conceding that the Indictment did not charge the Warehouse Defendants (i.e., Claimants) with international money laundering.  (FAC, ¶ 19.)  Such judicial manipulation should not be rewarded.  *See Rissetto*, 94 F.3d at 603 ("Judicial estoppel enables a court to protect itself from manipulation.").  Permitting the government to pursue its amended forfeiture theory under 18 U.S.C. § 981(a)(1)(A) would allow the government a ***third*** opportunity to obtain forfeiture of these valuable Warehouses.  *See Liquidators*, 630 F.3d at 1152 (recognizing the fundamental unfairness of allowing the government "a second bite at the same apple" in the forfeiture context after the government "bumbles its forfeiture proceedings").  If successful, the government stands to disproportionately gain real property worth hundreds of millions of dollars.  All of these reasons support a finding that the third factor weighs in favor of judicial estoppel given the unfair advantage the government will obtain if not barred.

The unfair detriment imposed on Claimants also weighs in favor of judicial estoppel.  If the government is permitted to pursue forfeiture of the Warehouses

under 18 U.S.C. § 981(a)(1)(A) when it previously represented—by its statements and through its conduct—that the Warehouses could only be subject to forfeiture pursuant to 19 U.S.C. § 1595a(a), Claimants will have no choice but to incur the significant expense of paying for a second jury trial in these civil forfeiture proceedings after Claimants already paid for a costly jury trial in the criminal action, which spanned ten full court days.  *See In re CFB Liquidating Corp.*, 581 B.R. 317, 339 (Bankr. N.D. Cal. 2017) (finding unfair detriment where not invoking judicial estoppel would prolong litigation and increase litigation expenses).  If the government elected to pursue its civil forfeiture allegations against the Warehouse Defendants in the criminal action—instead of changing its position to now assert that the Warehouses are forfeitable under 18 U.S.C. § 981(a)(1)(A)—the same jury, in the interests of judicial economy and mitigating litigation costs, would have been retained pursuant to Federal Rule of Criminal Procedure 32.2 to decide whether the Warehouses were subject to forfeiture. However, because the government changed its original position after this Court determined, as a matter of law, that 19 U.S.C. § 1595a(a) did not authorize forfeiture of real property, now if permitted a new jury will have to sit through another prolonged and complex trial to decide nearly identical issues presented to the jury in the criminal action.  Therefore, the third factor weighs in favor of judicial estoppel.

In light of the specific facts of this case and the analysis of the three factors above, the Court should exercise its discretion and invoke the equitable doctrine of judicial estoppel to bar the government from pursing forfeiture of the Warehouses under 18 U.S.C. § 981(a)(1)(A).

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the FAC in its entirety without leave to amend pursuant to Federal Rule of Civil Procedure 12(b)(6).

1 | Dated:  December 3, 2021                    LARSON LLP

2

3                                                           By:    /s/ Hilary Potashner

4                                                                   Stephen G. Larson
                                                                    Hilary Potashner
5                                                                   A. Alexander Lowder
                                                                    Jennifer C. Cooper
6                                                           Attorneys for Claimants
                                                            SCUDERIA DEVELOPMENT, LLC,
7                                                           VON KARMAN – MAIN STREET, LLC,
                                                            1001 DOUBLEDAY, LLC, and
8                                                           10681 PRODUCTION AVENUE. LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLAIMANTS' JOINT NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINTS